# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIC RIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:13-3077-CV-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION

Plaintiff Eric Riddle ("Riddle") seeks judicial review of the Commissioner of Social Security's ("Defendant's") denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* The Administrative Law Judge ("ALJ") found that Riddle suffered from multiple severe impairments, including "status post four back surgeries" with lumbar disc herniation and degenerative disc disease but retained the residual functional capacity ("RFC") to perform work as a pharmaceutical processor, a printed circuit board screener, and an eye glass frame polisher.

After carefully reviewing the parties' arguments and the entire record, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. Accordingly, the Commissioner's decision is AFFIRMED.

## Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits on April 8, 2010, alleging a disability onset date of February 23, 2010. The Commissioner denied his application at the

initial claim level on December 14, 2010, and on February 2, 2011, Plaintiff requested a hearing with an ALJ. On October 5, 2011, the ALJ held a video hearing, and on November 18, 2011, she issued a decision holding Plaintiff was not disabled as defined in the Act. On January 4, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

Plaintiff contends the ALJ erred at step four by: (1) discounting his credibility, (2) discounting his treating physician's opinion, and (3) improperly formulating his RFC. As discussed below, substantial evidence supports the ALJ's step-four analysis.

**A. The ALJ did not err in discounting Plaintiff's credibility.**

Plaintiff argues the ALJ erred in discounting his credibility because the record evidence does not support the ALJ's rationale.

The ALJ's evaluation of a claimant's credibility is crucial to the RFC determination because it influences the inclusion or exclusion of alleged limitations. *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

3

Substantial evidence supports the ALJ's credibility determination. Before explaining the evidence that supports the ALJ's findings, the Court acknowledges that the record does not support all of the ALJ's reasons for discrediting Plaintiff's credibility. The ALJ stated that there is no record evidence that Plaintiff utilized an assistive device for ambulation, R. at 16, but Plaintiff used a custom-made orthotic device to assist him in walking.[2] R. at 36, 339, 341. Additionally, the ALJ concluded that Plaintiff's near sedentary life was self-imposed, yet the ALJ failed to provide any citation to the record that supports this assertion.

If the ALJ relied solely on these findings to discredit Plaintiff's complaints, substantial evidence would not support her decision. The ALJ, however, provided several other well-supported reasons for discounting Plaintiff's credibility. Most significantly, the ALJ noted that Plaintiff ceased visiting his treating neurosurgeon even though the treatment regime provided pain relief. Over the course of several years, his neurosurgeon, Dr. Sami Khoshyomn, M.D. ("Dr. Khoshyomn"), performed several back surgeries and prescribed numerous steroid injections to alleviate Plaintiff's back and leg pain. R. at 256, 262-63, 309, 316, 466, 471. Following the surgeries and injections, Plaintiff reported reduced pain. R. at 309, 466. During an appointment on January 4, 2011, Dr. Khoshyomn prescribed another injection and told Plaintiff to return for further injections or, if the injections failed, to return for a consultation about another surgery, R. at 466, but Plaintiff failed to do either. During the hearing, Plaintiff testified that the injections provided no relief, and he decided not to return because he did not want to undergo another unsuccessful surgery. R. at 40.

The record evidence surrounding Dr. Khosyomn's treatment supports the ALJ's credibility finding. First, Plaintiff testified that the surgeries and injections provided no relief, R.

---

[2] Although the ALJ noted that Plaintiff used an orthotic device during the summary of the evidence, several paragraphs later she stated that Plaintiff did not use any assistive devices for ambulation. R. at 16-17.

4

at 40, yet Dr. Khoshyomn and other medical professionals consistently noted after the surgical procedures and injections that Plaintiff enjoyed significant pain relief, ranging from sixty to forty percent. R. at 309, 316, 466, 471. Second, the fact that the injections alleviated Plaintiff's back pain suggests that his back impairments are not disabling. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010). Next, as the ALJ noted, the failure to return in light of the several successful treatments arguably suggests that Plaintiff's pain decreased to a tolerable level following the injections and surgery.[3] Finally, Plaintiff's decision to discontinue treatment is in direct disregard of Dr. Khoshyomn's treatment plan, because regardless of whether the final injection worked, Plaintiff was directed to return for further consultation and treatment. His failure to follow Dr. Khoshyomn's directions detracts from his credibility. *See Guillams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."). Thus, the ALJ was warranted in discounting Plaintiff's credibility based on this evidence.

The ALJ also cited several other pieces of evidence that reflected negatively upon Plaintiff's credibility. Despite Plaintiff's allegations of a near sedentary existence, R. at 16, 37, 43, he was still able to drive, prepare his kids for school, walk, and climb stairs. R. at 16, 29, 32, 198, 200, 341. Although not dispositive, inconsistencies such as these detract from the claimant's credibility. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009). The ALJ also noted that Plaintiff ceased working for reasons unrelated to his claims of debilitating pain,

---

[3] Plaintiff challenges the ALJ's inference drawn from his failure to return to Dr. Khoshyomn. Plaintiff contends that he decided not to return because he did not want to undergo another surgical procedure. On the other hand, the ALJ deduced that in light of the prior success from the injections and surgeries, Plaintiff's failure to return suggested his pain had subsided to at least a tolerable level. Here, the evidence reasonably supports both of these opposing conclusions. In such a situation, the Court must defer to the ALJ's determination. *See Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010) ("[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, we must affirm the ALJ's decision.").

5

which similarly impugns his credibility. R. at 30; *see Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

The ALJ also explained that the objective medical findings did not completely support Plaintiff's claims of disabling pain. Plaintiff claimed that his back pain required him to recline or lie down continually throughout the day. R. at 37. The ALJ acknowledged that some medical evidence, such as numerous MRIs and surgical procedures, supported his claims of severe back impairments. R. at 15-16. However, she ultimately found that the clinical findings were devoid of any *significant* deficits in strength, range of motion, or posture which one would associate with debilitating symptoms. R. at 16. (emphasis added). Additionally, she noted that the record lacked any clinical findings regarding his alleged limited ability to squat, stand, or sit. *Id.*

The record supports these findings. Although Plaintiff's treating physician, Dr. David Dale, D.O. ("Dr. Dale"), occasionally noted that Plaintiff exhibited decreased strength, range of motion, and an abnormal gait, R. at 382, 385, 387, 394, during most visits, Dr. Dale did not find any deficits in Plaintiff's strength or mobility. R. at 379, 380, 381, 383, 384, 386, 388, 391, 392. Similarly, other doctors observed no problems with Plaintiff's gait or strength. E.g. R. at 295. Indeed, even immediately after Plaintiff's 2010 surgeries, Dr. Khosyomn only placed temporary restrictions on his ability to bend, twist, and lift. R. at 309, 325. Cumulatively, this lack of objective medical findings supporting Plaintiff's claims of debilitating pain detracts from his credibility. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004).

Because the majority of the articulated reasons are supported by the record, the Court finds that the ALJ's credibility determination was within the "available zone of choice." *See Buckner*, 646 F.3d at 556.

**B. The ALJ did not err in giving Dr. Dale's opinion little weight.**

Next, Plaintiff contends that the ALJ erred in discounting the opinion of Plaintiff's treating physician Dr. Dale. This argument is unavailing.

A treating physician's opinion is typically entitled to controlling weight if it is well-supported by, and not inconsistent with, other substantial evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is "internally inconsistent… [or] where the physician's opinion [is] inconsistent with the claimant's own testimony." *Myers*, 721 F.3d at 525. Although an ALJ may discount a treating physician's opinion, the ALJ must provide "good reasons for doing so." *Brown*, 611 F.3d at 951.

On September 15, 2011, Dr. Dale completed a medical source statement regarding Plaintiff's functional limitations. Dr. Dale opined that in an eight-hour work day Plaintiff could lift and carry five pounds occasionally or frequently; he could walk for 20 minutes without a break; he could stand or walk for a total of two hours; he could sit for two hours in a day and sit continuously for forty five minutes; he possessed limited ability to push, pull, and reach; he could never climb, stoop, kneel, crouch, or crawl; he could occasionally balance; and he needed to lie down for at least two hours. R. at 421-22.

As a threshold matter, the Court notes that Dr. Dale relied upon some clinically acceptable data and diagnostic techniques in formulating his opinion. He based his opinion on prior surgical reports and MRIs, R. at 422, which demonstrated that Plaintiff suffered from severe structural impairments which required several back surgeries. R. at 258, 261, 266, 270,

281-83, 288, 295, 300, 307, 313, 319-320, 365-68, 370, 396, 398, 405, 426, 452, 455, 459-60, 466. In addition, some of Dr. Dale's own treatment notes suggested Plaintiff experienced problems with range of motion, strength, and walking. R. at 375-76, 382, 385, 387, 394. Thus, Dr. Dale's opinion enjoys some support from the record evidence.

Nonetheless, the ALJ articulated several well-supported reasons for giving Dr. Dale's opinion little weight.[4] First, Dr. Dale's restriction on Plaintiff only lifting five pounds is arguably inconsistent with Plaintiff's own testimony. During the hearing, Plaintiff stated that he could probably lift a twenty-four pack of soda, which weighs approximately twenty pounds, over his head once. R. at 32. Although this evidence alone does not necessarily demonstrate that Plaintiff can occasionally lift or carry twenty pounds, it does support an inference that Plaintiff is not as limited as Dr. Dale suggests. *See Moore*, 623 F.3d at 602 ("[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, we must affirm the ALJ's decision.").

Moreover, the lifting, sitting, and standing restrictions imposed by Dr. Dale are inconsistent with other record evidence, and at times, Dr. Dale's own treatment notes. In the medical source statement, Dr. Dale identified "exacerbation of pain" as the reason for Plaintiff's standing, sitting, walking, and lifting restrictions. R. at 422. Prior to Plaintiff discontinuing treatment with Dr. Khoshyomn, however, Plaintiff reported that the surgical procedures and steroid injections provided him with pain relief. R. at 299-300, 302, 309, 324-25, 327, 331, 466. This record of pain relief undermines Dr. Dale's opinion that Plaintiff's pain imposes disabling functional limitations. *See Brown*, 611 F.3d at 955.

---

[4] Plaintiff attempts to analogize her case to this Court's recent decision in *Kirch v. Colvin*, No. 3:12-cv-5112-DGK-SSA, 2013 WL 5741241 (W.D. Mo. Oct. 23, 2013), wherein the Court remanded the case for further proceedings. *Kirch* is distinguishable. In that case, the ALJ gave *no* reasons for discounting the treating physician's opinions. *Id.* at *4. Here, the ALJ gave several good and well-supported reasons for discounting Dr. Dale's opinion.

Even Dr. Dale's own treatment notes do not support such sweeping limitations. Aside from periodically noting decreased strength and range of motion along with a gait disturbance, Dr. Dale's notes fail to mention any problems with sitting, standing, or lifting. R. at 375-409. In fact, on the majority of visits, Dr. Dale did not even identify problems with Plaintiff's muscle strength or ability to walk. R. at 379, 380, 381, 383, 384, 386, 388, 391, 392. These inconsistencies undermine the probative value of his opinion.

Finally, and most significantly, Dr. Dale's opinion was arguably inconsistent with Dr. Khoshyomn's treatment notes. The ALJ noted that Dr. Khoshyomn, who performed Plaintiff's 2010 surgeries, placed more lenient restrictions on him following the surgeries than what Dr. Dale imposed in his medical source statement. R. at 17. The only limitations Dr. Khoshyomn placed upon Plaintiff were temporary restrictions on bending, twisting, and lifting no more than 20 pounds, all which lasted only six weeks. R. at 309, 325. Had Plaintiff been as limited as Dr. Dale opined, Dr. Khoshyomn would have prescribed far more restrictive and permanent limitations on Plaintiff's ability to function.

Aside from these stated reasons, Dr. Dale's opinion was not entitled to controlling weight for another reason. Dr. Dale's opinion is nothing more than check-marked boxes with no meaningful narrative discussion. R. at 421-22. And opinions in this form carry little probative value. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

For all these reasons, the Court finds that the ALJ's decision to discount Dr. Dale's opinion was within the "available zone of choice." *See Buckner*, 646 F.3d at 556.

**C. The ALJ did not err in formulating Plaintiff's RFC.**

Finally, Plaintiff argues that the ALJ erred in formulating his RFC. Relying on *Lund v. Weinberger*, 520 F.2d 782 (8th Cir. 1975), Plaintiff contends remand is necessary because the ALJ rejected the only opinion addressing his ability to work. And without this opinion, Plaintiff

concludes that no record evidence supports the ALJ's RFC formulation. The Court finds Plaintiff's reliance on *Lund* is misplaced.

In *Lund*, the claimant filed for disability benefits based upon severe headaches resulting from an automobile accident. 520 F.2d at 783. After the district court affirmed the ALJ's denial of benefits, the Eighth Circuit reversed, holding that the ALJ erred in discrediting the claimant's subjective complaints of debilitating headaches because no record evidence contradicted the claimant's allegations. *Lund*, 520 F.2d at 785-86. In fact, the only medical reports in the record corroborated the claimant's allegations of disabling headaches. *Id.* at 785. In dicta, however, the Court remarked that the ALJ also erred in rejecting the opinion of the claimant's treating physician and relying upon his own inferences from the medical reports. *Id.*

Latching onto this dictum, Plaintiff contends that once the ALJ discounted Dr. Dale's opinion, she impermissibly relied upon her own inferences from Dr. Khoshyomn's treatment notes as the sole basis for formulating the RFC. Here, unlike *Lund*, the ALJ did not ignore all the medical reports that corroborated Plaintiff's subjective complaints, and solely rely upon her own unsubstantiated inferences from the record in formulating Plaintiff's RFC. Rather, she wrote a thorough opinion discussing evidence that supported and detracted from Plaintiff's allegations of disabling pain. R. at 14-17. Because there was substantial evidence undermining Plaintiff's complaints of disabling pain, the ALJ ultimately found his allegations were not fully credible. Based upon this finding, the scant limitations imposed in Dr. Khoshyomn's treatment notes, Plaintiff's own testimony, and other record evidence, the ALJ concluded that Plaintiff retained the RFC to perform light work. Accordingly, in formulating Plaintiff's RFC, the ALJ did not err in relying upon this substantial evidence over the properly discounted opinion of Dr. Dale. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to

10

rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:   May 1, 2014                         /s/ Greg Kays
                                            GREG KAYS, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT